# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 20, 2010

Lyle W. Cayce
Clerk

No. 09-30717

SARAH BLODGETT DUNBAR,

Plaintiff - Appellee

v.

CLAUDIA SEGER-THOMSCHITZ, Doctor,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, and KING and HAYNES, Circuit Judges.

EDITH H. JONES, Chief Judge:

A painting by Oskar Kokoschka entitled *Portrait of Youth* (Hans Reichel)(1910) ("the painting") is currently in the physical possession of the Appellee, Sarah Dunbar, in New Orleans, Louisiana. Appellant, Dr. Claudia Seger-Thomschitz, claims title to the painting, asserting that it was "confiscated" by the Nazis from her deceased husband's family. Dunbar sued to quiet title to the painting based on her ownership by acquisitive prescription under Louisiana law and the fact that Seger-Thomschitz's claims were barred by Louisiana's prescriptive laws. The district court granted summary judgment in favor of Dunbar. Segar-Thomschitz now appeals, asserting that this court should invoke "federal common law authority" to displace Louisiana law and Louisiana law is

preempted by the foreign policy of the Executive Branch. We reject these arguments and affirm the judgment of the district court.

## I.

Dr. Seger-Thomschitz, the sole heir of Raimund Reichel's estate, alleges that the painting was confiscated by the Nazis from Reichel's father through a "forced sale" in Vienna, Austria, in 1939. According to Seger-Thomschitz, Reichel's father, who was facing increasing Nazi persecution, transferred ownership of the painting and four other paintings to a Jewish art dealer named Kallir, an alleged collaborator with the Nazis. When Dunbar's mother purchased the painting from Kallir in 1946 in New York, she knew the Reichel family had owned the painting and knew or should have known that the painting may have been stolen. Dunbar's mother, according to the appellant, had a duty to investigate the painting's ownership. Dunbar inherited the painting from her mother in 1973.

After receiving a demand letter from appellant, Dunbar filed suit to quiet title to the painting. Seger-Thomschitz counterclaimed based on quasi-contract and unjust enrichment. The district court granted summary judgment in favor of Dunbar, because Dunbar had obtained title by acquisitive prescription under Louisiana state law and Seger-Thomschitz's counterclaims were time-barred by the applicable Louisiana prescriptive periods. The district court rejected Seger-Thomschitz's argument that the Louisiana prescription laws should be supplanted with "federal common law" to ensure the goals of the federal Holocaust Victims Redress Act ("HVRA"), Pub. L. No. 105-158, § 202, 112 Stat. 15, 17-18 (1998). The district court noted, *inter alia*, that the HVRA did not create a federal common law cause of action or a private right of action. The district court also found no material factual dispute over Dunbar's ownership of the painting, which had been open and continuous for well over ten years, fulfilling the requirements to establish ownership by acquisitive prescription

No. 09-30717

under Louisiana law. Undisputed evidence also established that the Reichel family sought post-Nazi compensation for other works of art and property, but not for this painting. The family twice loaned this painting to Kallir for exhibit and possible sale prior to the Nazi occupation of Austria. Significantly, those members of the Reichel family with direct knowledge of the painting's sale never sought its return.

On appeal, Appellant no longer relies on the HVRA, nor does she question that Louisiana prescriptive laws were correctly applied. Instead, she argues that Louisiana law should not be applied at all. Appellant contends that the court should invoke its "federal common law authority" to displace Louisiana law, and Louisiana law is preempted by the "Terezin Declaration," a non-binding document promulgated at the Prague Holocaust Assets Conference of June 30, 2009.

## II.

We review the district court's grant of summary judgment *de novo*. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). The court of appeals will not generally consider evidence or arguments that were not presented to the district court. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988). Plaintiffs may not advance on appeal new theories or raise new issues not properly before the district court to obtain reversal of the summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 (5th Cir. 1994)(en banc). The court of appeals will not consider an issue that a party fails to raise in the district court, absent extraordinary circumstances. *North Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 916 (5th Cir. 1996). Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it. *Id.*

No. 09-30717

## III.

## A.

Appellant argues, as she did in the district court, that "federal common law authority" should displace Louisiana law's prescriptive periods with federal doctrines of laches and unclean hands to enable claims to recover Nazi-confiscated artworks to be decided on their substantive merits. Appellant asserts that "federal courts displace otherwise applicable state law *whenever* it conflicts with or frustrates important federal interests or policies." No court has ever adopted what Appellant is urging here—some form of special federal limitations period governing all claims involving Nazi-confiscated artwork. In such cases, courts have consistently applied state statutes of limitations. *See, e.g.*, *Orkin v. Taylor*, 487 F.3d 734, 741-42 (9th Cir. 2007); *Von Saher v. Norton Simon Mus. of Art at Pasadena*, 578 F.3d 1016, 1029-30 (9th Cir. 2009); *Detroit Institute of Art v. Ullin*, 2007 WL 1016996, *2 (E.D.Mich. 2007); *Toledo Museum of Art v. Ullin*, 477 F. Supp. 2d. 802, 806 (D. Ohio 2006). Further, as this case is brought under federal diversity jurisdiction, the application of state statutory limitations periods is controlled by *Erie*. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 108-09 (1945).

With regard to fashioning federal common law, the Supreme Court has held:

> The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law, nor does the existence of congressional authority under Art. I mean that federal courts are free to develop a common law to govern those areas until Congress acts. Rather, absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases. In these instances, our federal system does not permit the controversy to be resolved under state law, either because the authority and duties of

the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control.

*Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640-41, 101 S. Ct. 2061, 2067 (1981). Here, no Act of Congress has articulated "rights and obligations of the United States" in regard to these claims; even the HVRA creates no individual cause of action. *Orkin*, 487 F.3d at 739. Where Congress has not acted, federal courts' power to displace state law with federal common law is severely constrained. Further, no interstate or international disputes are implicated in this controversy that require creation of a uniform federal rule of law. There is in sum no basis to lay out any federal common law to replace Louisiana's prescriptive periods.

## B.

For the first time on appeal, Seger-Thomschitz contends that the application of Louisiana's prescriptive laws conflicts with and must be preempted by U.S. foreign policy, most recently articulated in the Terezin Declaration.[1] The preemption theory she now raises is unrelated to the argument for invoking federal common law. Although federal preemption is a legal issue, Appellant has not met the burden of establishing extraordinary circumstances to justify consideration of a new legal theory for the first time on appeal. *See North Alamo Water*, *supra*.

Appellant argues that she could not have cited the Terezin Declaration to the district court because it was issued just a few days before the district court's ruling. That the Terezin Declaration was promulgated contemporaneously with

---

[1] The Terezin Declaration is a "legally non-binding" document promulgated on June 30, 2009, at the Prague Holocaust Era Assets Conference organized by the Czech Republic. Forty-six states, including the United States, approved of the document. The Terezin Declaration recommends that participating countries implement national programs to address real property confiscated by Nazis, Fascists, and their collaborators and the development of "non-binding guidelines and best practices for restitution and compensation of wrongfully seized immovable property."

No.  09-30717

the district court's order would not have prevented Appellant from citing the Declaration to the court after it ruled.  But more important, the Terezin Declaration is not crucial to the Appellant's preemption argument.  It is a "nonbinding executive agreement" that is representative of what Appellant argues to be the preemptive scope of longstanding U.S. foreign policy.  Appellant thus could have easily raised the preemption theory to the district court based upon the historical antecedents of the Terezin Declaration, which she avers date back to 1998.[2]  Appellant offered no compelling reason why she failed to present this theory to the district court nor does it appear that a miscarriage of justice will result from our failure to address it.  We are unpersuaded that this novel theory should be explored for the first time on appeal.

## C.

Even if we were to consider Appellant's preemption theory, it is untenable.  Appellant relies principally on *American Insurance Association v. Garamendi*, 539 U.S. 396, 123 S. Ct. 2374 (2003), to support the argument that the Terezin Declaration should preempt the Louisiana prescriptive periods.  In *Garamendi*, California enacted the Holocaust Victim Insurance Relief Act, which required any insurer that did business in California and that sold insurance policies to Europe during the Holocaust era to disclose certain information about those policies to the California State Insurance Commissioner or risk losing its license.  The Supreme Court held the California law was preempted by the implied dormant foreign affairs power of the President.  *Id.* at 423-24, 123 S. Ct. at 2391-92.  The opinion noted that "resolving Holocaust-era insurance claims that may be held by residents of this country is a matter well within the Executive's responsibility for foreign affairs."  *Id.* at 420, 123 S. Ct. at 2390.  Federal

---

[2] Appellant's own evidence on appeal notes that the "Terezin Declaration reinforces the Washington Principles."  The Washington Conference Principles on Nazi-Confiscated Art were promulgated in 1998 as part of the Washington Conference on Holocaust-Era Assets.  Forty-four nations, including the United States, approved these "non-binding principles."

6

preemption prevented the state from pursuing a more aggressive policy than the President's foreign policy, as expressed by executive agreements with other nations and statements by high-level executive officials. *Id.* at 421-22, 427, 123 S. Ct. at 2390, 2393 ("California seeks to use an iron fist where the President has consistently chosen kid gloves."). Significantly, *Garamendi* found preemption while acknowledging the absence of either an express federal preemption clause or a direct conflict between California and federal law. *Garamendi* noted, however, that where a state has acted within "its traditional competence, but in a way that affects foreign relations, it might make good sense to require a conflict, of a clarity or substantiality that would vary with the strength or traditional importance of the state concern asserted." *Id.* at 420 n.11, 123 S. Ct. at 2390.

Seger-Thomschitz argues that to apply Louisiana's prescriptive laws would unconstitutionally intrude on the President's authority to conduct foreign affairs. The policy represented by the Terezin Declaration should preempt Louisiana prescription periods because it expresses a preference to adjudicate claims for recovery of Nazi-confiscated artworks on their facts and merits. As additional support, Appellant cites statements by various executive branch officials expressing concern that such claims were not being adjudicated on the merits but were barred by statutes of limitations and other defenses.

There are key distinctions between this case and *Garamendi*. In *Garamendi*, California was essentially pursuing independent policy objectives in favor of Holocaust victims. The existence of its law limited the President's ability to exercise his preeminent foreign affairs authority. In this case, Louisiana has not pursued any policy specific to Holocaust victims or Nazi-confiscated artwork. The state's prescription periods apply generally to any challenge of ownership to movable property. La. Civ. Code art. 3544 (1870); La. Civ. Code art. 3506 (1870). Louisiana's laws are well within the realm of

traditional state responsibilities. In exercising its strong interest in regulating the ownership of property within the state through these prescriptive laws, Louisiana has not infringed on any exclusive federal powers. Indeed, the Terezin Declaration itself contains language noting that "different legal traditions" should be taken into account. Appellant presents no proof that U.S. policy on behalf of Holocaust victims is committed to overriding generally applicable state property law. The type of preemption established by *Garamendi* is thus inapplicable; Louisiana's prescriptive laws are not preempted by the Terezin Declaration, U.S. foreign policy, or the President's foreign affairs powers.

## IV.

For these reasons, we affirm the judgment of the district court is **AFFIRMED**.