# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 1, 2010

No. 09-51082

Lyle W. Cayce
Clerk

MICHAEL R. LEVY, as Independent Executor
of the Estate of Meyer Levy, Deceased,

Plaintiff-Appellant

v.

UNITED STATES OF AMERICA,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:07-CV-339

Before JONES, Chief Judge, and REAVLEY and HAYNES, Circuit Judges.

PER CURIAM:[*]

The Estate of Meyer Levy seeks a refund of $3,236,377 in estate taxes claiming the assessment overvalued Plano property at $23,286,412 and undervalued the discount of the partnership interest. Judgment in favor of the government is based on the jury verdict of $25 million value without allowing any discount for lack of control and marketability due to partnership ownership.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-51082

We affirm the judgment and address the numerous points of error raised by the Estate.

## Rulings on Evidence

The Estate argues that the trial court erred when it allowed the admission of (1) evidence of the ongoing negotiations over the sale of the property, specifically the offers and proposals; (2) evidence of the listing price of the property, and the ultimate sale price of the property; (3) valuation testimony by the Government's expert based on flawed methodology; and (4) opinion testimony by a lay witness and hearsay testimony. Admission of evidence is reviewed for abuse of discretion. *Paz v. Brush Engineered Materials, Inc.*[1] "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[2]

The Estate argues that the evidence concerning the negotiations over the property were not relevant to the determination of the fair market value of the property on September 25, 2001. Offers to buy and sell property may not be admissible as evidence of its fair market value. *Sharp v. United States*.[3] It depends on the specifics of each case. *See Univ. Computing Co. v. Lykes-Youngstown Corp.*[4] "In virtually every case which has utilized this general rule, the offers came from third parties, frequently unidentified, and were mere hearsay. Further, in most of these cases there was no evidence that the offeror had the type of expert qualifications which would have entitled him to testify as to his opinion on value had he been called at trial."[5] Here, the proposals came

---

[1] 555 F.3d 383, 387 (5th Cir. 2009).

[2] *Id.* (internal quotation omitted).

[3] 191 U.S. 341, 348, 24 S. Ct. 114, 115 (1903).

[4] 504 F.2d 518, 545–46 (5th Cir. 1974).

[5] *Id.*

No. 09-51082

from identified, sophisticated developers who could be reasonably expected to have investigated the value of the land before making a proposal. And, presumably the developers could have been called to testify had the Estate desired to test their knowledge under cross-examination.

Moreover, we have held that offers of purchase were admissible as evidence of fair market value when they were part of ongoing negotiations resulting in a contract with substantially the same terms. *Sammons v. United States*.[6] With one exception, which the parties agreed was unreasonable, the offers on the property were between $20 million and $25 million. The Estate resolutely held out for $25 million throughout all of the negotiations. And, the final sale price was $25 million. The evidence of the negotiations was consistent with the actual sale and was admissible.

Additionally, the Estate contends that the evidence of the final sale price was inadmissible because the sale: (1) was too remote in time, and (2) was contingent on rezoning. To be relevant, the eventual sale of the property must be within a reasonable time. *Atlantic Coast Line R. Co. v. United States*.[7] We have held that "[i]t is well settled that the admissibility of comparable sales . . . is a matter within the peculiar discretion of the trial judge." *United States v. Certain Land in City of Fort Worth, Tarrant County, Tx*.[8] In *Jayson v. United States*, we held that a trial court did not abuse its discretion in admitting evidence of the sale of comparable property three and a half years after the valuation date.[9] Here, the contract for sale was signed two years after the

---

[6] 433 F.2d 728, 731 (5th Cir. 1970).

[7] 132 F.2d 959, 963 (5th Cir. 1943) ("[A]n actual sale remote in time affords no standard.").

[8] 414 F.2d 1029, 1031 (5th Cir. 1969).

[9] 294 F.2d 808, 810 (5th Cir. 1961).

3

No. 09-51082

valuation date, and unlike the comparison in *Jayson*, the sale evidence was for the actual land at issue, rather than comparable land. Additionally, the Estate's expert testified that the Plano real estate market was relatively flat—increasing approximately 3%—so the sales price would be an accurate comparator.

The Estate further argues that the sale price was inadmissible because the rezoning of the land to single-family and retirement community use was not foreseeable. Levy himself had tried to have the property rezoned to no effect. They argue that the eventual sales price was unforeseeable and, therefore, the land must instead be valued as though it is agricultural land. We disagree. Levy's attempted rezoning was aggressive and unrealistic. And, the Plano comprehensive land use plan anticipated that the property would be rezoned to at least single-family homes. That the property would be rezoned to allow for some type of development was entirely foreseeable. The district court did not abuse its discretion in admitting evidence of the actual sale price of the property.

Nor did the court abuse its discretion in allowing testimony regarding the listing price of the property. As long as it is not based on pure speculation, "[i]n general, an owner is competent to give his opinion on the value of his property." *King v. Ames*[10] His testimony is admissible "because of the presumption of special knowledge that arises out of ownership of the land." *LaCombe v. A-T-O, Inc.*[11]

The Estate also contends that the district court erred when it denied the Estate's motion to exclude the expert testimony of Jack P. Friedman—the Government's valuation expert. We review a trial court's decision to admit

---

[10] 179 F.3d 370, 377 (5th Cir. 1999) (quotation marks and citation omitted).

[11] 679 F.2d 431, 434 (5th Cir. 1982) (quotation marks and citation omitted).

expert testimony for abuse of discretion. *United States v. Cooks.*[12] "[W]e have recognized that district courts are given wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge will not be disturbed on appeal unless manifestly erroneous."[13] "Manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Guy v. Crown Equip. Corp.*[14]

Admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence as further developed by the Supreme Court in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*[15] The only part of Rule 702 and *Daubert* that the Estate urges on appeal is the methodology Friedman used to arrive at his valuation of the property, which the Estate argues was novel and likely invalid. Specifically, the Estate contends that using offers as part of his basis for valuation was an "unrecognized appraisal method" and that Friedman's assumption that the property would be rezoned improperly relied on hindsight rather than on facts known to the parties at the time. Because we have already recognized the admissibility of offers under the circumstances of this case, we cannot say that the court abused its discretion in permitting Friedman to refer to such offers, with appropriate contingencies, in his valuation analysis. And, as explained above, Friedman's assumption that the property would be rezoned for single-family housing was reasonable. The trial court did not abuse its discretion in admitting Friedman's expert testimony.

---

[12] 589 F.3d 173, 179 (5th Cir. 2009). We note that the Estate cites *Caracci v. Comm'r of Internal Revenue*, 456 F.3d 444, 456 (5th Cir. 2006), and argues that we review the methodology used to determine value *de novo*. *Caracci* is inapposite because there we reviewed the *trial court's* valuation methodology, not the admission of expert testimony.

[13] *Cooks*, 589 F.3d at 179 (internal quotations and ellipses omitted).

[14] 394 F.3d 320, 325 (5th Cir. 2004) (internal quotation omitted).

[15] 509 U.S. 579, 113 S. Ct. 2786 (1993).

No. 09-51082

The Estate also argues that the trial court improperly allowed Allen Jordan—the Estate's real estate broker—to testify as to Levy's desired price; to describe the property as the "crown jewel of undeveloped real estate in the city of Plano, Texas"; to define "contract of sale" and "letter of intent"; and to opine as to the legitimacy of the offers on the property from the various developers, constituting hearsay and impermissible opinion testimony. Pursuant to Rule 803(1), testimony which "describ[es] or explain[s] an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is not hearsay.[16] Lay witness opinion testimony is governed by Rule 701, which provides that lay witness testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[17]

Jordan testified based on his experience as a real estate broker, and his familiarity with the property as its listing agent and as a long-time resident of Plano. We find no place in the record—and the Estate cites none—where Jordan testified that Levy told Jordan that he wanted a particular price for the property. Jordan did testify to the price at which he listed the property, but he is allowed to testify regarding his own actions. As to Jordan's statement that the property was the crown jewel of Plano, that statement, while colorful, is rationally based on Jordan's perceptions as an experienced real estate broker and Planoite. Additionally, as admonished by the trial court, Jordan was careful to define "contract of sale" and "letter of intent" based on his own understanding

---

[16] FED. R. EVID. 803(1).

[17] FED. R. EVID. 701.

No. 09-51082

of the terms as they were used in his business as a realtor. This testimony was proper lay testimony because it "result[ed] from a process of reasoning familiar with everyday life . . . [rather than] a process of reasoning which can be mastered only by specialists in the field." *United States v. Yanez Sosa.*[18] Nor is Jordan's testimony regarding the offers improper, because he testified only as to his firsthand knowledge of the negotiations and his impressions based on his participation in those negotiations.

## Denial of New Trial

The Estate argues that the trial court committed reversible error when it denied the Estate's Rule 59 motion for new trial on the value of the property and the discount because the jury's verdict was against the great weight of the evidence. "[W]e review the denial of a motion for new trial brought on the ground that the verdict is against the great weight of the evidence for abuse of discretion, which we have held to mean that the denial will be affirmed unless there is a clear showing of an absolute absence of evidence to support the jury's verdict." *Rivera v. Union Pacific R. Co.*[19] We will not disturb the jury's verdict unless the Government failed to advance even marginal evidence in support of its position.[20]

The record contains ample evidence to support the jury's verdict valuing the property at $25 million. The Estate listed the property, and eventually sold the property, for $25 million. It was immediately resold for $26.5 million. Sophisticated developers with no stake in the current litigation engaged in

---

[18] 513 F.3d 194, 200 (5th Cir. 2008) (citing FED. R. EVID. 701, Advisory Committee Notes to 2000 Amendments).

[19] 378 F.3d 502, 506 (5th Cir. 2004) (internal quotation omitted); *see also Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) ("The district court has sound discretion to grant or deny new trial motions; we affirm absent a clear showing that this discretion has been abused.") (internal quotation omitted).

[20] *Riviera*, 378 F.3d at 506.

ongoing negotiations for the property for prices in the $20–25 million range. The Estate's expert testified that the market in Plano remained relatively flat during the period between levy's death and the sale of the property. Also Jordan testified regarding the value of the property. Any of these provides sufficient support for the jury's verdict on the property.

The jury verdict regarding the discount also finds support in the record. The partnership agreement itself would be sufficient evidence. The jury could have rationally found that no discounts for lack of control or marketability were merited because the Estate controlled the general partner interest, which had nearly unfettered control over the Partnership's assets. The trial court did not abuse its discretion when it denied the Estate's motion for new trial.

## Denial of Judgment as a Matter of Law

The Estate argues that the trial court erred when it denied the Estate's Rule 50 motion for judgment as a matter of law. "A [motion for judgment as a matter of law] challenges the legal sufficiency of the evidence to support the verdict." *Hodges v. Mack Trucks, Inc.*[21] "Our review is *de novo*, using the same standard as the district court."[22] "In reviewing the evidence, we draw all reasonable inferences in the non-movant's favor, and disregard all evidence favorable to the moving party that the jury is not required to believe."[23] "That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that th[e] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods. Inc.*[24]

---

[21] 474 F.3d 188, 195 (5th Cir. 2006).

[22] *Id.*

[23] *Id.* (internal quotation omitted).

[24] 530 U.S. 133, 151, 120 S. Ct. 2097, 2111 (2000) (internal quotation omitted).

No. 09-51082

The Estate contends that the jury arbitrarily disregarded unequivocal, uncontradicted, and unimpeached testimony of an expert witness, bearing on technical questions of causation beyond the competence of lay people. The Government counters that the jury had the partnership agreement in evidence from which it could have determined that there was no lack of control or marketability. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," *Palasota v. Haggar Clothing Co.*,[25] including the weight to be given expert witnesses. *V & S Ice Mach. Co. v. Eastex Poultry Co.*[26] "[E]vidence in the record can support a jury verdict if it is of such quality and weight that reasonable and fair-minded individuals in the exercise of impartial judgment might reach different conclusions." *Green v. Adm'rs of Tulane Educ. Fund.*[27] We have a higher opinion of the ability of this jury to understand that the question of control and marketability was shown by the control of the partnership's assets.

### Estoppel

For the first time on appeal, the Estate argues that the Government is estopped from challenging the Estate's valuation of the property because the IRS approved the Estate's election under § 2032. The Estate contends that when the Government agreed that the election of the alternate date under § 2032 was proper, and thus that the value of the estate as a whole declined after Levy's death on March 25, 2001, it must also have agreed that the Estate's valuation of the property as of March 25, 2001, was proper. "Under our general rule,

---

[25] 499 F.3d 474, 480 (5th Cir. 2007) (internal quotations omitted).

[26] 437 F.2d 422, 426 (5th Cir. 1971).

[27] 284 F.3d 642, 653 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405 (2006).

arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate 'extraordinary circumstances.'" *State Indus. Prods. Corp. v. Beta Tech. Inc.*[28] "Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." *Dunbar v. Seger-Thomschitz.*[29] There is no miscarriage of justice when an error is not plain or obvious. *Conley v. Bd. of Trs. of Grenada County Hosp.*[30] Since estoppel is an equitable doctrine and the Estate characterized the issue as one of first impression, the Estate waived this argument by failing to raise it at the trial court level.

## Jury Instructions

The Estate contends that the trial court erred when it (1) improperly instructed the jury on the definition of fair market value; (2) improperly instructed the jury regarding the Discount; (3) placed the burden of proof on the Estate; (4) submitted the question of the Discount to the jury; and (5) failed to give an instruction to cure any bias against the Estate arising from the Government's presentation of evidence in support of its § 2036 affirmative defense. "In reviewing the jury charge we ask whether the jury charge properly stated the applicable law and, if not, whether the challenged instruction affected the outcome of the case." *Smith v. Xerox Corp.*[31]

First, the Estate argues that because the definition of fair market value did not specify that the value is determined by a *hypothetical* willing buyer and seller, the jury gave improper weight to Levy's desire to sell the land for $25

---

[28] 575 F.3d 450, 456 (5th Cir. 2009).

[29] 615 F.3d 574, 576 (5th Cir. 2010).

[30] 707 F.2d 175, 178 (5th Cir. 1983).

[31] 602 F.3d 320, 325 (5th Cir. 2010).

million.  While the Estate did not specifically raise this objection at the Rule 51(b) hearing, the word "hypothetical" was in its requested charge and the trial court issued a blanket ruling covering requested but not incorporated jury instructions.  Their objection, at least on this point, is therefore arguably preserved.[32]

The trial court instructed the jury that "the 'fair market value' is the cash price at which property would change hands between a willing buyer and a willing seller when the buyer is under no compulsion to buy and the seller is not under any compulsion to sell and both the buyer and seller have reasonable knowledge of all relevant facts."  The Estate is correct that "[t]he buyer and seller are hypothetical, not actual persons[.]"  *Estate of Jameson v. Comm'r of Internal Revenue*.[33]  However, the instruction given by the court does not suggest otherwise and is a correct statement of the law, closely mirroring the Fifth Circuit's Pattern Jury Instructions' definition of fair market value.[34]  The instruction described a willing buyer and a willing seller rather than the actual buyer and the actual seller.  The jury would not have been misled by this instruction.  The court therefore properly instructed the jury on the definition of fair market value.

Second, the Estate argues that the trial court erred when it used the phrase "if any" in its instruction on the Discount, improperly suggesting that a

---

[32] *But see* FED. R. CIV. P. 51(c)(1) ("A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."); *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 368 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010).

[33] 267 F.3d 366, 370 (5th Cir. 2001).

[34] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL) § 13.3 (2009) ("Fair market value means the amount a willing buyer would have paid a willing seller in an arms-length transaction, when both parties are fully informed about all of the advantages and disadvantages of the property, and neither is acting under any compulsion to buy or sell.").

finding of no discount could be appropriate. According to the Estate, both the Government's failure to prevail on its § 2036 defense and the language of the partnership agreement meant that the Estate was entitled to at least some discount. However, § 2036 and the Discount amount are not linked in the way the Estate urges. The Government's § 2036 affirmative defense required proof that the Partnership had no legitimate non-tax purpose. If the Government met its burden of proof on this issue, then the Partnership would not have been entitled to a Discount. But, it does not follow that a limited partner's interest in a Partnership with a legitimate non-tax purpose is automatically worth less than 100%. The jury was free to make its finding and was not misled.

The Estate's three remaining objections to the jury instructions were not raised at the Rule 51(b) hearing, directly or indirectly. Tardy jury instruction objections are reviewed, if at all, under the plain error standard. *Tompkins v. Cyr*.[35] To succeed on plain error review, the Estate must show "(1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would seriously affect the fairness, integrity or public reputation of judicial proceedings." *Highlands Ins. Co. v. Nat'l Union Fire Ins. Co*.[36] "It is the unusual case that will present such an error."[37]

First, the Estate argues that the trial court improperly placed the burden of proof on it for two reasons. The Estate contends that 26 U.S.C. § 7491 shifts the burden of proof to the Government if "a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability

---

[35] 202 F.3d 770, 783 (5th Cir. 2003); *see also* FED. R. CIV. P. 51, Notes to 2003 Amendments.

[36] 27 F.3d 1027, 1032 (5th Cir. 1994) (internal quotation omitted).

[37] *Id.*

of the taxpayer."[38]  This is the Estate's suit for refund and the Estate proposed a jury instruction stating that it had to prove every essential element of its refund claim by a preponderance of the evidence.  Along the same lines, the Estate next argues that because the Government asserted § 2036 as an affirmative defense, it should have had the burden of proof on the Discount issue.  But, the Government's § 2036 affirmative defense—on which it would have had the burden of proof—did not go to the jury.  The Government's § 2036 defense has no bearing on the Estate's burden to prove its claim as presented in the jury instructions.

Second, the Estate argues that trial court's instruction on how to calculate the discount confused the jury because it referred to the Estate's net assets rather than the Estate's limited partner assignee interest in the Partnership. We disagree.  The jury instruction specifically stated that "[t]he discount to be applied, if any, to the net asset value of the partnership discount determines the fair market value of the partnership interest."  We see no likelihood of confusion from this instruction.  The instruction regarding the Discount is therefore not plainly erroneous.

Third, the Estate also contends that the question regarding the Discount should never have gone to the jury because the parties had stipulated that the court would determine the Discount.  The parties stipulated that "any disputed issues of fact that are necessary to determine the tax refund owed to the Estate, if any, other than disputed fact issues relating to the fair market value of the Plano property and to the factors underlying the Government's affirmative defense of 'offset' under Section 2036 should be heard and determined by the Court, not by the jury, after the jury returns its verdict."  Despite this stipulation in the joint proposed pretrial order, at no point did the Estate object

---

[38] 26 U.S.C. § 7491(a)(1).

to the presence of a jury question or the instruction on the Discount. The inclusion was not reversible error, because even if it were error to submit the question to the jury—and we do not so hold—the error was not plain because as the Estate points out "[n]o court has squarely addressed whether a joint stipulation can be waived."

And last, the Estate argues that the evidence introduced by the Government in support of its § 2036 affirmative defense led to an accumulation of evidence concerning Levy's alleged bad faith in forming the Partnership. The Estate maintains that the trial court erred when it failed to instruct the jury to cure the harm done by this improper evidence. We conclude it was not plain error. As we outlined above, the record contains sufficient evidence to support the jury's finding that the Partnership was not entitled to a discount absent any allegedly improper evidence of bad faith.[39]

AFFIRMED.

---

[39] Although we have declined to set aside the jury's verdict of zero discount, we note that the actual discount applied in taxing the Estate was thirty percent. Given the valuation found by the jury, it would have had to find a discount of larger than thirty percent for the verdict to make a difference to the judgment in this case.