# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40563
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 29, 2015

Lyle W. Cayce
Clerk

MONICA CORDERO,

Plaintiff-Appellant,

v.

AVON PRODUCTS, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:13-CV-470

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

In this employment case, Monica Cordero appeals from the district court's grant of summary judgment, and denial of Cordero's partial motion for summary judgment, in favor of Avon Products, Inc. (Avon) on Cordero's claims for breach of contract and fraud.  We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40563

## I

In 2012, Cordero was hired by Avon for the position of District Sales Manager (DSM) for Avon District No. 1803, located within Avon's "Texan Division." A DSM's responsibilities include training, incentivizing, and developing Independent Sales Representatives (ISRs)—independent contractors who purchase Avon products for resale to their customer base—to maximize the district's performance. Under Avon's Sales Leadership program, participating ISRs, titled "Sales Leaders," undertook the additional responsibility to recruit new ISRs. As a DSM, Cordero was eligible to earn bonuses based on sales, orders, and recruiting activities achieved by ISRs and Sales Leaders in her district pursuant to Avon's Incentive Compensation Plan (ICP).

In April 2013, Avon furnished recruitment and sales reports to Cordero detailing her district's productivity for the first quarter of 2013. According to Cordero, these reports indicated that Cordero was due a $70,850 bonus. Shortly thereafter, however, Avon learned that certain Sales Leaders in the Texan Division had fabricated recruiting and sales activities. Specifically, the Sales Leaders created fictitious accounts for persons they claimed to have recruited as new ISRs and placed fake orders on credit from those individual's accounts. This dishonest activity resulted in orders for $450,000 of Avon products for which Avon claims it did not get paid. Though both parties agree that Cordero was not involved in the dishonest activity, Cordero has acknowledged that it occurred.

Because the feigned activity falsely inflated the productivity of Cordero's district, Avon adjusted the performance numbers, and Cordero's bonus calculated therefrom, to reflect only legitimate sales and recruiting. As a result, Avon paid Cordero a $1,200 bonus based on the sales for which Avon received payment. Cordero nevertheless contends that pursuant to the ICP,

No. 15-40563

she was due $70,850, calculated from all activity published in the aforementioned reports.

This dispute resulted in Cordero's filing claims against Avon for breach of contract, fraud, and negligence.  While she originally brought suit in state court, Avon properly removed the action to federal court on the basis of diversity jurisdiction.  Cordero subsequently moved for partial summary judgment on her breach of contract claim, and Avon moved for summary judgment on all of Cordero's claims.  After a pre-trial hearing on the motions, the district court granted Avon's motion for summary judgment "for the reasons stated on the record" and dismissed the suit.  Cordero timely appealed the district court's judgment regarding her claims for breach of contract, fraud by false promise, and fraud by non-disclosure.

## II

We review the district court's grant of summary judgment in favor of Avon de novo, "applying the same standard as the district court."[1]  A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  The parties' motions are considered independently, "viewing the evidence and inferences in the light most favorable to the nonmoving party."[3]

## III

Under Texas law, applicable to this diversity action, the elements in a breach of contract claim include: "(1) the existence of a valid contract; (2) that

---

[1] *Potts v. Chesapeake Exploration, L.L.C.*, 760 F.3d 470, 473 (5th Cir. 2014) (citation omitted).

[2] *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting FED. R. CIV. P. 56(a)).

[3] *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

No. 15-40563

the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach."[4]    In dispute is the third element, whether Avon breached the employment agreement—namely, the bonus provisions of the ICP.

The crux of the parties' dispute is contract interpretation.  Cordero alleges breach insofar as Avon adjusted her bonus to exclude fictitious sales and recruiting activity.  Because the ICP speaks only of "sales," but not "legitimate sales," and does not specifically exclude "sales manufactured by fraud," Cordero reads Avon's bonus provisions to trigger a bonus when products are ordered, shipped, and notated on Avon's quarterly report, as occurred here.  According to Cordero, a jury could conclude that Avon, due to its alleged poor credit policies, should bear the financial consequences of non-payment.  Avon responds that it is entitled to summary judgment as a matter of law because the bonus provisions only applied to legitimate sales "achieved," i.e. sales resulting in payment.

The ICP is a chart that identifies sales, order, and leadership goals necessary to trigger specific bonus awards.  The grid lists quarterly awards for "Sales Plan Achievement" and "Leadership Plan Achievement."    The Administrative Guidelines, which define the terms, provide in relevant part:

> 6. Leadership Bonus – Consists of 2 components – Total Upline Growth target achievement paid quarterly when 100% of Total Upline target is met and includes a New to Title component that is earned . . . when 100% of Total Leadership Upline target is met.
> . . . .
> 10. Quarterly Sales Bonus – Paid quarterly if commissionable sales achievement is at least 95% and 95% quarterly order count plan is achieved.

---

[4] *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

No. 15-40563

11. Quarterly Orders Bonus – Paid quarterly if 100% of orders count plan is achieved.

"Whether a contract is ambiguous is a question of law for the court to decide."[5] "A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law."[6] However, a contract is ambiguous if subject to two or more interpretations, though "both interpretations must be *reasonable*."[7] Ambiguity creates a fact issue for the jury; but, if a contract is unambiguous, "we give the contract its plain grammatical meaning."[8]

We agree with the district court that "commissionable sales," as referenced in the Administrative Guidelines, is unambiguous and refers to legal sales, "as opposed to those that were a product of some fraudulent representation." Black's Law Dictionary defines "sale" to include four elements: "(1) parties competent to contract, (2) mutual assent, (3) a thing capable of being transferred, and (4) a price in money paid or promised."[9] Here, we have neither parties competent to contract, as the orders were placed on behalf of fictitious individuals, nor mutual assent. When Avon shipped the orders, they operated under the assumption that the order was a bargained-for exchange between itself and a *real* buyer, for payment.

Reading the Guidelines as a whole, we similarly hold that the terms "achieved" and "met" necessarily refer to bona fide sale, order, and recruiting activity. Achieve means "to be successful in doing something," "to attain a

---

[5] *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996).

[6] *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).

[7] *Id.* (emphasis in original).

[8] *Friendswood*, 926 S.W.2d at 283.

[9] *Sale*, BLACK'S LAW DICTIONARY (10th ed. 2014).

5

desired end or level of performance," or "to strive, make an effort."[10] "Met" as referred to in the leadership bonus provision, operates in a synonymous fashion. It strains credulity, and is thus unreasonable, to read the bonus provisions to apply to the wholly fabricated activity at issue here. The culpable Sales Leaders made no effort to attain the desired end: business for themselves and Avon.

We further dispense with Cordero's argument regarding Avon's failure to present evidence of Cordero's involvement in the dishonest conduct. We reiterate that Avon concedes Cordero was not a party to the dishonest conduct. Even so, neither Cordero's lack of culpability, nor her inability to approve sales, credit lines, or shipments, is material to her bonus entitlement.[11] Though Cordero is correct that her bonus was intended to be a reflection of her "individual performance," as intimated in her offer letter, Cordero's "individual performance" is inextricably tied to the performance of her district—namely, the ISRs' sales, orders, and recruiting activities—given her role as DSM. The interpretive issue is whether the commissionable sales, orders, and recruiting efforts targets were achieved or met. That Cordero disagrees in her interpretation does not render the terms ambiguous.[12]

Due to our determination that Cordero was only entitled to a bonus derived from legitimate sales and recruiting efforts as a matter of law, we further hold that Cordero has failed to raise a genuine issue of material fact as to whether Avon breached the ICP. The summary judgment record shows that

---

[10] OXFORD ENGLISH DICTIONARY ONLINE, http://www.oed.com/view/Entry/1480 (last visited Oct. 28, 2015).

[11] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 ("[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[12] *Columbia Gas Transmission*, 940 S.W.2d at 589.

No. 15-40563

Avon paid Cordero a bonus on legitimate sales, excluding "the fraudulent sales, orders and recruiting efforts that did not actually exist." Cordero admits that she was paid $1,200 and has acknowledged the existence of the fraudulent activity in her district multiple times. To the extent Cordero now, for the first time, seeks to raise a fact issue as to the exact "percentage or dollar amount of the subject sales, if any, which were procured by fraud," that argument is waived. It is clear that "[p]laintiffs may not advance on appeal new theories or raise new issues not properly before the district court to obtain reversal of the summary judgment."[13]

Accordingly, based on our review of the summary judgment record and the parties' arguments, we hold that the district court properly granted summary judgment to Avon on Cordero's claim for breach of contract.

## IV

Cordero also appeals her claims of fraud by false promise and fraud by non-disclosure. The district court implicitly ruled on Cordero's fraud claims when it granted Avon's Motion for Complete Summary Judgment and dismissed the suit.[14]

Under Texas law, a fraud claim requires a "material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury."[15] Cordero's claims of fraud by false promise and fraud by non-disclosure are theories by which the

---

[13] *Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 576 (5th Cir. 2010) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 (5th Cir. 1994) (en banc) (per curiam)).

[14] *See, e.g.*, *Babb v. Dorman*, 33 F.3d 472, 476 n.6 (5th Cir. 1994).

[15] *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (quoting *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994) (per curiam)).

misrepresentation element of fraud can be proven.[16]  Fraud by false promise involves "[a] promise to do an act in the future . . . when made with the intention, design and purpose of deceiving, and with no intention of performing the act."[17]  Fraud by non-disclosure is premised on the notion that silence "may be as misleading as a positive misrepresentation of facts."[18]  To survive summary judgment, Cordero must present sufficient evidence to create a genuine issue of material fact as to each element of fraud.[19]

Cordero alleges that Avon committed fraud by false promise when Avon unqualifiedly promised to pay Cordero pursuant to the ICP, yet did not intend to do so with respect to orders for which Avon did not receive payment.  Though Avon contends that Cordero did not appeal the judgment as to fraud by false promise because Cordero did not list it as an issue for appeal, Cordero did brief the claim and we thereby reach it.[20]

Cordero has offered no evidence, other than her own interpretation of the ICP, to support her allegation that Avon's promise to pay her according to the ICP was false, much less intentionally false.  Nor did Cordero allege in her affidavit that she relied upon Avon's alleged misrepresentation when she accepted the DSM position.  As such, Cordero's evidence is insufficient to preclude summary judgment on her fraud by false promise claim.

Nor can Cordero survive summary judgment as to her non-disclosure theory of fraud.  Cordero asserts that Avon failed to disclose that Avon "had

---

[16] *See Columbia/HCA Healthcare Corp. v. Cottey*, 72 S.W.3d 735, 745 (Tex. App.—Waco 2002, no pet.).

[17] *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).

[18] *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997).

[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, e.g., In re Segerstrom*, 247 F.3d 218, 224-27 (5th Cir. 2001).

[20] *See Jimenez v. Wood County*, 621 F.3d 372, 379 n.4 (5th Cir. 2010), *aff'd en banc*, 660 F.3d 841 (5th Cir. 2011).

prior experience with the kinds of activities it now calls fraud, that [Avon] had done nothing . . . to prevent such fraud from recurring, and that such fraud could adversely affect [Cordero's] bonuses."

Under Texas law, fraud by non-disclosure is only implicated when a party has a duty to speak, yet deliberately remains silent.[21] "Whether such a duty exists is a question of law."[22] Cordero has offered no authority, and we found none, indicating that Avon owed a duty to make the cited disclosures to Cordero as a prospective employee.[23] This alone merits summary judgment in favor of Avon as a matter of law, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."[24]

But even assuming such duty existed, Cordero failed to provide sufficient evidence to show that the non-disclosures were material,[25] that Avon intended for Cordero to rely on the non-disclosures, or that Cordero did, in fact, rely upon them in accepting the DSM position. That Avon dealt with fraudulent accounts and orders in the past, of which Cordero provides limited evidence, does not create a material fact issue as to whether Avon intentionally withheld such information.[26] Though Cordero states in her affidavit that Avon informed

---

[21] *Bradford v. Vento*, 48 S.W.3d 749, 755-56 (Tex. 2001).

[22] *Id.* at 755.

[23] *See Ins. Co of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998) ("Generally no duty of disclosure arises without evidence of a confidential or fiduciary relationship."); *see also Bradford*, 48 S.W.3d at 755 ("Several courts of appeals have held that a general duty to disclose information may arise in an arm's-length business transaction when a party makes a partial disclosure that, although true, conveys a false impression.").

[24] *Celotex Corp.*, 477 U.S. at 323.

[25] *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 338 (Tex. App.—Houston [14th Dist.] 1991, no writ) ("Material means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question.").

[26] *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

her that bonuses were a large part of DSM compensation, she does not contend that she accepted employment on the assumption that her bonuses would reflect illegitimate sales and recruiting activity.

In sum, the scant evidence to which Cordero points the court is insufficient to enable a reasonable jury to render a verdict in her favor.[27] While we must construe the evidence in the light most favorable to Cordero, the non-movant, we cannot, "in the absence of any proof, assume that [she] could or would prove the necessary facts."[28]

*      *      *

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Avon. Cordero's alternative motion for oral argument which was carried with the case is DENIED.

---

[27] *See McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) ("Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence.").

[28] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (emphasis omitted).