**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 4, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 03-10534

RENE RIVERA,

Plaintiff-Appellee,

versus

UNION PACIFIC RAILROAD CO.,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before BARKSDALE, EMILIO M. GARZA, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this negligence action under the Federal Employer's Liability Act ("FELA"), Union Pacific

Railroad Company ("Union Pacific") appeals the district court's denial of its alternative motions for

judgment as a matter of law or new trial following a jury verdict in favor of railroad employee Rene

Rivera on his personal injury claims. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Rivera's FELA action against Union Pacific claimed that he sustained a herniated disk on July

17, 2001, as a result of the railroad's failure to provide him with a safe work place by assigning him

to a task which it knew or should have known was beyond Rivera's physical capabilities. At the time of the incident in question, Rivera was employed by Union Pacific as a track welder. His job responsibilities included "destressing" rails, a process through which sections of the track that have bowed are restored to their original form in order to avoid derailments. Destressing involves cutting out small portions of the bowed rail, rewelding the rail, and smoothing the edges of the repaired section with a "rail shear." The physically demanding task requires repeated bending, stooping, pulling, pushing, and lifting loads weighing in excess of 10 to 15 pounds.

At some point in early June 2001, Rivera began noticing pain in his lower back and groin, which became progressively worse. On June 28, 2001, Rivera filled out an accident report and informed his supervisor, Leroy Nettles, that he was suffering from lower back and groin pain. That same day, Rivera went to Abilene Regional Hospital, where a doctor diagnosed his condition as "low back strain." Rivera's back and groin pain persisted. On July 3, 2001, Rivera sought advice from a chiropractor, who wrote a note recommending that Rivera be restricted to "moderate work status at this time. . . [; n]o heavy lifting, pushing or pulling." The July 3 note further stated that Rivera was to "be re-evaluated in 10 to 14 days." When Rivera presented the note to Nettles, Nettles requested clarification of the term "moderate." Accordingly, Rivera returned to the chiropractor and obtained a second note dated July 5, 2001. That note restricted Rivera to 6 to 8 hours of work a day, and specified "No heavy lifting, pushing, or pulling (Not to exceed 10 to 15 pounds)." The note further stated that the restrictions "are expected to last until at least 7/17/01." Although Rivera testified that he showed Nettles the second note, Nettles denied that he ever saw it.

The following day, July 6, 2001, Rivera went to the emergency room in Abilene, where he was again diagnosed with low back strain. Dr. Lynn Barlow, who examined Rivera, gave him a note

2

instructing that he (1) do no lifting for 5 days; (2) find a doctor for further care on "Monday," and (3) follow-up with a doctor if his groin pain persisted. Rivera testified that he gave the note to Nettles. At Nettles' urging, Rivera then decided to use the one week he had remaining of his vacation time to rest.

Rivera testified that upon his return to work on July 16, 2001, he informed Nettles that his back was "still sore." Though Nettles claimed at trial that Rivera said he felt "fine," Nettles also testified that he told Rivera that as far as he was concerned, Rivera was still on restricted duty. Nonetheless, according to Rivera, Nettles directed Rivera to "go to Ranger and destress a rail[;] there will be a gang out there to help you." Rivera did so, and worked a full day without incident. The next day, July 17, Nettles again assigned Rivera to a destressing project. During the course of this task, Rivera attempted to pick up a rail shear with the assistance of co-worker Mark Lucky. The rail shear weighed 35 pounds, but the pair had difficulty prying the shear from the track and had to pull on the shear. Rivera testified that at the moment the rail shear came loose, he "heard a loud pop noise" and felt sharp, burning pain in his lower back, causing him to collapse to the ground in pain. The other Union Pacific crew members improvised a back board and stretcher to carry Rivera to a crossing where he was met by an ambulance. At the hospital, Rivera was given steroid shots and released.

On July 30, 2001, Dr. Robert LeGrand, a neurosurgeon, diagnosed Rivera with a herniated disk between L5 and S1. Approximately six months later, after attempts at conservative treatment did not alleviate Rivera's condition, Dr. LeGrand performed surgery on Rivera's back.

On March 26, 2002, Rivera brought this FELA action against Union Pacific, seeking damages for his groin and back injury under a theory of negligent assignment. At trial, Union Pacific orally

3

moved for judgment as a matter of law when Rivera rested and at the close of evidence, arguing that no evidence supported submission of the negligent-assignment issue to the jury "for the reason that there [was] no medical restriction" limiting Rivera on July 17, 2001. The district court denied both motions and submitted the issue to the jury. The jury found both sides negligent, attributing 95% fault to Union Pacific and the balance to Rivera, and awarded Rivera $1,196,020, primarily for lost earning capacity. Rivera moved for judgment for $1,048,420, conceding that there was no evidence supporting certain expenses for which the jury had awarded damages. Union Pacific renewed its motion for judgment as a matter of law and alternatively moved for a new trial, asserting that it was not negligent, that Rivera had a herniated disk prior to the July 17 lifting incident, and that no evidence supported the jury's findings. The trial judge denied both motions and rendered judgment in the amount requested by Rivera, plus post-judgment interest at a 10% rate. The trial judge also denied Union Pacific's subsequent motion for a new trial, but granted the railroad's motion to modify the judgment and issued a nunc pro tunc judgment reducing post-judgment interest to 1.31%. Union Pacific timely filed notice of appeal.

## DISCUSSION

On appeal, Union Pacific challenges the district court's denial of its alternative motions for judgment as a matter of law or new trial, arguing that the evidence is insufficient to sustain the jury's finding of FELA liability under the "negligent-assignment" doctrine. We affirm.

I.      Standards of review

Preliminarily, the parties dispute the standard governing our review of the district court's denial of Union Pacific's motion for judgment as a matter of law. A court may enter judgment as a matter of law under Rule 50 only where there exists "no legally sufficient evidentiary basis" for the

4

jury's verdict. FED. R. CIV. P. 50(a)(1); Vadie v. Mississippi State Univ., 218 F.3d 365, 372 (5th Cir.2000), cert. denied, 531 U.S. 1113 (2001). The standard for reviewing such motions is the same in the trial court and on appeal. Springborn v. American Commercial Barge Lines, Inc., 767 F.2d 89, 94 (5th Cir. 1985) (citation omitted). In the FELA context, when a defendant challenges the sufficiency of the evidence to support a plaintiff's verdict, we must affirm the denial of the defendant's motion for judgment as a matter of law unless there is a complete absence of probative facts to support the conclusion reached by the jury. Lavender v. Kurn, 327 U.S. 645, 654 (1946); Wooden v. Missouri Pacific Railroad Co., 862 F.2d 560, 561 (5th Cir. 1989) (applying the complete absence of evidence standard in a FELA case when reviewing the denial of a defendant's motion for a directed verdict under former Rule 50 (citing Allen v. Seacoast Products, Inc., 623 F.2d 355, 360 & nn. 5-6 (5th Cir.1980)); Davis v. Odeco, Inc., 18 F.3d 1237, 1243 (5th Cir. 1994) (reviewing for complete absence of evidence the denial of a defendant's motion for judgment as a matter of law in a case brought under the Jones Act, which fully incorporates the FELA's featherweight standard of review (citing Bommarito v. Penrod Drilling Corp., 929 F.2d 186, 188 (5th Cir. 1991)); see Lane v. R.A. Sims, 241 F.3d 439, 445 (5th Cir. 2001) (reviewing for complete absence of evidence the denial of a defendant's motion for judgment on its cross-claim against a co-defendant).

Union Pacific devotes a substantial amount of ink to its assertion that this Court should be guided by a reasonableness standard in deciding whether to uphold the jury's verdict. Although Union Pacific presents several variations of this argument, its contentions boil down to the view that the Boeing "substantial evidence" standard governs our review in this case. See Boeing v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (providing that a motion for judgment notwithstanding the verdict should be granted only when the facts and inferences point so strongly

5

and overwhelmingly in favor of a moving party that reasonable persons could not arrive at a contrary verdict), overruled on other grounds in Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997) (en banc). This argument is without merit. Our precedents clearly establish that in this Circuit, a judgment as a matter of law against the plaintiff in a FELA suit is appropriate "only when there is a complete absence of probative facts" supporting the plaintiff's position. Wooden, 862 F.2d at 561; Davis, 18 F.3d at 1243; Bommarito, 929 F.2d at 188. As we have previously stated, "[t]his standard is highly favorable to the plaintiff, and recognizes that the FELA is protective of the plaintiff's right to a jury trial." Wooden, 862 F.2d at 561.[1]

Similarly, we review the denial of a motion for new trial brought on the ground that the verdict is against the great weight of the evidence for abuse of discretion, which we have held to mean that the "denial will be affirmed unless there is 'a clear showing of an absolute absence of evidence to support the jury's verdict.'" Lane, 241 F.3d at 444 (stating in a FELA case involving a defendant's jury verdict that "[o]ur 'review of the denial of a new trial motion is more limited than when one is granted'" (citing Whitehead v. Food Max of Miss., Inc., 163 F.3d 265, 269 (5th Cir.1998) (same, in non-FELA context)). Such showing "'indicat[es] that the trial court had abused its discretion in refusing to find the jury's verdict contrary to the great weight of the evidence.'" Id.

---

[1]Rivera and Union Pacific also dispute whether the railroad properly preserved in its original motion for judgment as a matter of law several issues which the railroad now urges on appeal -- namely, that the doctrine of negligent assignment includes an element of force missing in this case, that Rivera's failure to request lighter duties or his "voluntary decision to pick up the rail shear" precludes recovery, or that Rivera failed to establish a causal connection between the railroad's conduct and his injury. Because the "complete absence of evidence" standard governs our review of a denial of a FELA defendant's motion for judgment regardless of whether the issues urged on appeal were raised in such motion before the jury deliberated, we need not address whether Union Pacific has waived these issues.

Consequently, we must not disturb the verdict unless Rivera failed to advance even a marginal claim for relief. See, e.g., Davis, 18 F.3d at 1241; Boeing Co., 411 F.2d at 374-75; accord Phillips v. Western Co. of North America, 953 F.2d 923, 927 (5th Cir.1992).

II.     Analysis

Because the "complete absence of supporting probative facts" standard is appreciably more deferential to jury verdicts than the reasonable jury standard, we need only consider whether Rivera adduced sufficient evidence to meet the "featherweight" burden under the FELA. See Davis, 18 F.3d at 1241 (citing Bommarito, 929 F.2d at 188). We conclude that he did.

The FELA provides the exclusive remedy for a railroad employee injured as a result of his employer's negligence. See, e.g., Wabash R.R. Co. v. Hayes, 234 U.S. 86, 89 (1914); Janelle v. Seaboard Coast Line R.R. Co., 524 F.2d 1259, 1261 (5th Cir.1975). The statute authorizes an injured railroad employee to recover damages from his employer for "injury or death resulting in whole or in part from the [railroad's] negligence." 45 U.S.C. § 51. The ultimate fact question is whether the railroad exercised reasonable care in creating a reasonably safe working environment. Urie v. Thompson, 337 U.S. 163, 179 n.16 (1949). The railroad's duty to create a reasonably safe work environment encompasses its duty to assign an employee to work for which he or she is reasonably suited. Emmons v. Southern Pacific Transp. Co., 701 F.2d 1112, 1120 (5th Cir. 1983). A railroad company breaches that duty if it negligently assigns its employee to perform work beyond his or her physical capacity -- that is, if the railroad knew or should have known of the employee's diminished work capacity and, in spite of that knowledge, the railroad continued to assign the employee to tasks that it knew or should have known would aggravate his or her physical condition. See id.; Nat'l R.R. Passenger Corp. v. Krouse, 627 A.2d 489, 496 (D.C. 1993). To prevail in this

7

case, Rivera need only adduce some evidence that tends to show that his employer's negligence "played any part, even the slightest, in producing [his] injury." Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506 (1957).

A.      Fault or breach of the standard of care

Union Pacific asserts that it is entitled to judgment as a matter of law or a new trial because the evidence presented was insufficient to sustain the jury's finding that the railroad was negligent. In support of its position, Union Pacific primarily argues that it could not be liable for Rivera's back injury under a theory of negligent assignment because it did not, through Nettles, "force" or "order" Rivera to destress the rail or lift the rail shear on July 17, 2001. Union Pacific further maintains that the task to which Nettles assigned Rivera on that date posed no apparent or obvious risk of spinal injury because his diminished condition was not self-evident, no medical restrictions were in place on that date, and Rivera failed to request reassignment. These arguments are unavailing.

First, all witnesses agree that when Rivera returned to work, Nettles directed him to do some task relating to destressing a rail. The parties presented sharply conflicting testimony, however, regarding exactly what Nettles told Rivera to do. On direct, Nettles denied that Rivera informed him upon his return to work that he still suffered from back pain. Nonetheless, Nettles testified that: he told Rivera that he was still on restricted duty; he anticipated that Rivera might overexert himself; he instructed Rivera to "just stand around and supervise" the destressing project and that he was "not to do any of the work;" and that the actual welding was to be done by another individual, most likely Mark Lucky.

Rivera, by contrast, testified that when he returned to work, he told Nettles that his "back was still sore." According to Rivera, Nettles nevertheless directed him to "go . . . destress a rail,"

8

and told him that there would "be a gang there to help" him. Rivera explained that he complied out of concern "on behalf of [his] job." Rivera further testified that destressing must be done by a qualified welder, and that he was the only qualified welder for Union Pacific at that work site on the day in question.[2] Rivera denied that Nettles told him that he was only supposed to supervise, that he was not "actually" supposed to do any welding, or that Lucky was supposed to weld that day.

Rivera's testimony was corroborated by both his co-worker, Lucky, and his on-site destressing supervisor, Eric Meier. Lucky testified that he worked for Union Pacific as a truck driver, not a welder, and that he never received any training as a welder. Although Lucky was present when Rivera received instructions to destress the rail, Lucky denied that he heard Nettles tell Rivera that he was supposed to merely supervise the job. Lucky further denied ever being told by Nettles that he (Lucky) was supposed to do the welding. Meier similarly testified that Nettles told him that Rivera would be the welder for the job. Meier also stated that he did not recall Nettles saying that Rivera was on restricted duty or that Rivera was only supposed to supervise.

Second, Rivera introduced evidence that the railroad, through Nettles, knew or should have known that Rivera's back was indeed in a diminished condition on July 17 and that the task of destressing rails places heavy strain on an employee's back and could possibly cause serious injury. Although the parties presented conflicting evidence regarding whether Rivera, upon his return to work, informed Nettles that he continued to suffer from back pain, Union Pacific does not dispute that it knew about Rivera's back condition prior to July 17, 2001, that Rivera was treated on at least three occasions in late June and early July, 2001, for lower back and groin strain, and that this

---

[2]Rivera testified that the only other qualified welder employed by Union Pacific at that location, his cousin Artie Rivera, had the day off on July 17, 2001.

condition kept Rivera off the job for the week preceding July 17. Rivera testified that he also gave Nettles the July 5, 2001, chiropractor's note, which instructed that Rivera's work restrictions proscribing heavy lifting, pulling, or pushing, were "expected to last until at least 7/17/01."

Further, on cross-examination by Rivera, both Nettles and Dr. Roy Craig Ponder, the defense expert, conceded that it would not be prudent for an employer to assign a worker who suffers from symptoms of disk herniation to "actually do the work" of destressing a rail. Nettles stated that destressing is "not the type of job that a person who has a work limitation of not lifting 10 or 15 pounds or not bending or stooping or pulling or pushing should do," and that assigning heavy work to a person with an inflamed back "runs the risk of further injury." Dr. Ponder likewise testified that "surely" it would be "prudent on the part of any supervisor of a worker who[] [is] suffering from [symptoms of herniation] to not assign him to do . . . heavy lifting, stooping, bending, that kind of thing."

In light of the foregoing, we find that the conflicting evidence was a legally sufficient evidentiary basis for the jury's finding that Union Pacific was negligent. The jury was entitled to credit Rivera's version of the events, and plainly did so in this case. "Needless to say, it is not our function to re-weigh the evidence or re-evaluate the credibility of witnesses; that is for the jury." Lane, 241 F.3d at 446 (citing Hiltgen v. Sumrall, 47 F.3d 695, 700 (5th Cir.1995)). Taking the evidence in the light most favorable to the verdict, as we must, we find that the record reveals that Nettles knew of Rivera's back condition and that Nettles assigned Rivera to actually destress the rail -- a task which necessarily requires welding and which he alone, as the only welder available, could perform. As noted above, Union Pacific admitted that, assuming the truth of these two facts, assigning Rivera to destress the rail constituted a breach of its duty to assign Rivera to work for

10

which he is reasonably suited. To the extent that Rivera voluntarily lifted the rail shear, as Union Pacific asserts, the jury was entitled to consider and in fact did consider whether Rivera was comparatively negligent, as evidenced by the jury's assignment of 5 % fault to Rivera. See Williams v. The Long Island Railroad Company, 196 F.3d 402, 407 (2d Cir. 1999). Contrary to Union Pacific's assertion, the fact that Rivera perhaps over-exerted himself on July 17 does not preclude a finding of FELA negligence on the railroad's part. See Norfolk & Western Ry. Co. v. Ayers, 538 U.S. 135, 144-145 (2003) (stating that Congress, in 1939, abrogated the assumption of the risk doctrine in FELA cases and that "the FELA [also] . . . 'rejected the doctrine of contributory negligence in favor of . . . comparative negligence'" (quoting Consolidated Rail Corporation v. Gottshall, 512 U.S. 532, 542 (1994) (internal citation omitted)); Williams, 196 F.3d at 407.[3]

In sum, because there was not a complete absence of probative facts supporting the jury's finding of negligence, we decline to set aside the jury's finding that the railroad breached the applicable standard of care in assigning Rivera to a task which it knew or should have known exceeded his physical capabilities.

B.      Causation

Union Pacific next argues that no evidence supports the jury's finding of a causal nexus between Nettles' assignment of Rivera to the destressing project on July 17, 2001, and Rivera's back injury. Union Pacific contends that "the only reasonable inference" that can be drawn from the evidence presented is that Rivera sustained his herniated disk *before* the July 17 incident. According

---

[3]We note that Union Pacific's assertion that Rivera's failure to request reassignment precludes liability is merely another way of stating that Rivera voluntarily assumed the risk of injury, and for that reason this argument, too, must fail. See Norfolk & Western Ry. Co., 538 U.S. at 144-145.

to Union Pacific, because the herniated disk preexisted the events of July 17, any negligence that occurred on that date could not be "even the slightest cause of the herniated disk." We disagree.

The Supreme Court has "used the term 'slightest' to describe the reduced standard of causation between the employer's negligence and the employee's injury in FELA § 51 cases. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997) (en banc) (citing Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506 (1957)). Under the FELA, "'the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'" Consolidated Rail Corp. v. Gottsall, 512 U.S. 532, 533 (1994) (quoting Rogers, 352 U.S. at 506); Gautreaux, 107 F.3d at 335 (quoting Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 523 (1957) (applying same standard in Jones Act case)).

In this case, Rivera's expert, Dr. Legrand, testified on direct that it was more than likely that Rivera herniated his disk on July 17, 2001, when, in the course of attempting to lift the 35-pound rail shear, Rivera heard a pop and was brought to his knees in pain. Dr. LeGrand further testified that a person suffering from lower back pain would likely suffer further injury if he were to perform heavy manual labor while the tissue is affected or fatigued.

Rivera presented circumstantial evidence supporting Dr. LeGrand's opinion. Rivera introduced evidence that he underwent physical examinations on June 28, July 3, and July 6. On each occasion, he was diagnosed with low back strain, yet not one of the pre-July 17 medical reports indicates that the examining doctor even suspected a herniated disk. By contrast, when Dr. LeGrand saw Rivera soon after the July 17 incident, he told Rivera that a "lumbar MR scan would be advisable" if Rivera's condition did not improve in two weeks. Further, it was undisputed that

12

Rivera's back condition significantly deteriorated as of July 17. Although Rivera had a sore back prior to July 17, on that date he was rendered disabled, had to be carried off on a stretcher, and later had to undergo back surgery.

In support of its position, Union Pacific urges this Court to disregard Dr. LeGrand's testimony, arguing that because his opinion rested on the false representation made by Rivera that he had no back problems prior to July 17, 2001, the expert's testimony as to when the herniation occurred has no probative value. Union Pacific points out that Dr. Ponder, the defense expert, testified on direct that "within reasonable medical probabilities, the most likely explanation" for Rivera's "clinical presentation" was that "a disk herniation in the lower lumbar regions" was the source of Rivera's persistent groin and lower back pain during "late June, 2001," and thus pre-existed the July 17 incident. On cross-examination, however, Dr. Ponder twice conceded that feeling a pop in one's back coupled with a severe onset of pain -- as Rivera reported to Dr. LeGrand and in the accident report to the railroad --"would be consistent" with a final herniation of the disk. Dr. Ponder further agreed that Rivera at least aggravated his back injury on July 17 and had "a great deal more difficulty at that time."

Based on the above and our careful review of the entire record in this case, we find that there was not a complete absence of probative factual evidence on the issue of causation -- as there must be to set aside a plaintiff's jury verdict in a FELA case. See Davis, 18 F.3d at 1243 (citing Bommarito, 929 F.2d at 188). We emphasize that Rivera is entitled to recovery under the FELA if he adduced merely "some" probative evidence that Union Pacific's "negligence played any part -- however small -- in the development of his condition." Davis, 18 F.3d at 1243 & n.17 (noting that the jury is even "entitled to infer causation from unexplained events" (citing Landry v. Two R.

13

Drilling Co., 511 F.2d 138, 142 (5th Cir. 1975) (internal citation omitted)). Although Union Pacific presented evidence that Rivera failed to disclose his history of back and groin pain to Dr. LeGrand, the difficulty with the railroad's argument is that the jury had all of this information before it. Indeed, the railroad's able counsel had the opportunity to, and did in fact attempt to impeach Dr. LeGrand's testimony on cross. Nonetheless, the jury chose to credit the testimony of Rivera and his witnesses. As noted above, it is not the task of this Court to reconsider the evidence or assess the credibility of witnesses, and we do not find that the evidence adduced by Rivera was so lacking as to prohibit the jury from finding a causal nexus between the railroad's assignment of Rivera to the destressing project on July 17 and Rivera's back herniation. See Lane, 241 F.3d at 446; Davis, 18 F.3d at 1243 & n.17; Hasham v. California State Bd. of Equalization, 200 F.3d 1035, 1047 (7th Cir.2000) (declining to revisit the jury's decision to credit the plaintiff's testimony that he sustained injury as a result of his employer's negligence notwithstanding the fact that the defendant had offered into evidence a video showing the plaintiff engaging in activity which allegedly was inconsistent with his claimed injury and had offered evidence that the plaintiff had lied under oath about his criminal history (citing United States v. Hickok, 77 F.3d 992, 1006 (7th Cir.1996)). We therefore are convinced that the district court did not err in denying Union Pacific's motion for judgment and further agree with the district court that the railroad is not entitled to a new trial.

CONCLUSION

For the foregoing reasons, we find that there was a "legally sufficient evidentiary basis for a reasonable jury" to render a verdict for Rivera in this case, and thus the district court properly denied Union Pacific's Rule 50 motion for judgment. We further find that the district court did not abuse

14

its discretion in denying Union Pacific's alternative motion for a new trial. The judgment of the

district court, and its order denying a new trial, are therefore affirmed.

AFFIRMED.