IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 7, 2012

Lyle W. Cayce
Clerk

No. 09-40736

HAROLD E. HUFFMAN,

Plaintiff - Appellee

v.

UNION PACIFIC RAILROAD,

Defendant - Appellant

Appeal from the United States District Court for the
Eastern District of Texas, Lufkin

ON PETITION FOR REHEARING EN BANC

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.
PER CURIAM:

The court having been polled at the request of one of the members of the court, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (Fed. R. App. P. 35 and 5th Cir. R. 35), the petition for rehearing en banc is DENIED.

In the en banc poll, 3 judges voted in favor of rehearing(Dennis, Elrod, and Graves), and 12 judges voted against rehearing (Jones, King, Jolly, Davis, Garza, Stewart, Clement, Prado, Owen, Southwick, Haynes, and Higginson).

ENTERED FOR THE COURT:


   /s/ Leslie H. Southwick

LESLIE H. SOUTHWICK
United State Circuit Judge


Judge Smith did not participate in consideration of the rehearing en banc.


DENNIS, Circuit Judge, dissenting:

I dissent from the court's failure to rehear this case en banc. The panel majority opinion improperly reverses a jury verdict of $606,000 and impermissibly adds extra burdens to the standard of causation applicable in cases arising under the Federal Employers Liability Act ("FELA") and the Jones Act[1] in our circuit. The panel opinion holds that a FELA jury may not infer directly from the evidence that the railroad's negligence contributed to the plaintiff's injury unless a witness has first expressly testified that such a causal relationship exists. This holding directly conflicts with the Supreme Court's decisions in CSX Transportation, Inc. v. McBride, 131 S. Ct. 2630 (2011), and Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500 (1957), and our decision

---

[1] This holding applies to Jones Act cases because that Act adopts the FELA standard of causation by reference. See Johnson v. Cenac Towing, Inc., 544 F.3d 296, 301 n.2 (5th Cir. 2008).

and circuit precedent in Rivera v. Union Pacific Railroad Co., 378 F.3d 502 (5th Cir. 2004).

In McBride and Rogers the Court held that under FELA the test of causation of injury in a jury case is simply "whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." McBride, 131 S. Ct. at 2636 (quoting Rogers, 352 U.S. at 506). The panel majority opinion, by reversing the jury verdict and holding that the jury could not draw a reasonable inference that employer negligence played a part, even the slightest, from the expert, lay, and circumstantial evidence of record, unless supported by a witness's explicit testimony on causation, directly conflicts with McBride and Rogers by imposing a standard of causation in FELA cases that is more burdensome than the relaxed standard of causation prescribed by the Supreme Court. Under FELA, "[t]he burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference." Rogers, 352 U.S. at 508 (footnote omitted).[2]

Furthermore, in Rivera, we followed the Supreme Court's decision in Lavender v. Kurn, 327 U.S. 645 (1946), in holding that "[i]n the FELA context, when a defendant challenges the sufficiency of the evidence to support a plaintiff's verdict, we must affirm the denial of the defendant's motion for judgment as a matter of law unless there is a complete absence of probative facts to support the conclusion reached by the jury." Rivera, 378 F.3d at 505 (citing

---

[2] "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Rogers, 352 U.S. at 508 n.17 (citing The Robert Edwards, 19 U.S. (6 Wheat.) 187, 190 (1821)); see also Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 330 (1960) ("[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." (citing Rogers, 352 U.S. at 508 n.17)).

Lavender, 327 U.S. at 654). This standard clearly does not require explicit causation witness testimony or bar the jury from drawing its own reasonable inferences from the evidence as to whether employer negligence played any part, however slight, in bringing about the injury. The panel majority opinion directly conflicts with Rivera because it reverses the district court and grants a Judgment as a Matter of Law ("JMOL") for the railroad despite the presence of a great quantum of probative facts and evidence that support the jury's verdict.

### 1. Fault or Breach of the Standard of Care (Conceded on Appeal by the Railroad and the Panel Majority)

"[R]easonable foreseeability of harm . . . is indeed an essential ingredient of [FELA] negligence. The jury, therefore, must be asked, initially: Did the carrier fai[l] to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances[?]" McBride, 131 S. Ct. at 2643 (second alteration added) (citations omitted) (internal quotation marks omitted). "If [employer] negligence is proved, however, and is shown to have played any part, even the slightest, in producing the injury, then the carrier is answerable in damages even if the extent of the [injury] or the manner in which it occurred was not '[p]robable' or 'foreseeable.'" Id. (first alteration added) (citation and footnote omitted) (internal quotation marks omitted).

In this case, the jury found and inferred directly from the evidence that the railroad was negligent in failing to train Huffman and the railroad's other trainmen in ergonomically safe work methods and in failing to provide them with safe equipment and work environments; that the railroad knew or should have known that this negligence would result in musculoskeletal injuries to Huffman and other trainmen; that Huffman worked under these conditions caused by the railroad's negligence as a trainman for 39 years; that Huffman suffers from osteoarthritis of his knees that developed during his employment;

and that Huffman's injuries were not caused by his own fault. The jury awarded Huffman $606,000 in damages.

On appeal, the railroad does not contest the jury's findings and inferences from the evidence that the railroad was negligent in failing to take precautions against trainmen's musculoskeletal injuries, through ergonomic training, safe equipment and safe workplaces. Thus, these facts are now undisputed and cannot be questioned on appeal. The majority agrees.

2. Causation: The Correct FELA Analysis Under the Supreme Court's Decisions.

Under FELA, the test of a jury case is simply "whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." McBride, 131 S. Ct. at 2636 (quoting Rogers, 352 U.S. at 506). In Rogers, the Court emphasized that "[i]t does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence." 352 U.S. at 506. "Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or in part' to its negligence." Id. at 506-07 (footnotes omitted).

Furthermore, the Court in Rogers made clear that FELA "supplants [the carriers' common-law] duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence." Id.

at 507. "[T]he inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference." Id. at 508. "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Id. at 508 n.17 (citing The Robert Edward, 19 U.S. (6 Wheat.) 187, 190 (1821)); see also Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 330 (1960) ("[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." (citing Rogers, 352 U.S. at 508 n.17)).

Finally, the Court in Rogers concluded that "[t]he Congress when adopting the law was particularly concerned that the issues [of] whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fair-minded men could reach these conclusions on the evidence [and that] by the 1939 amendments [Congress] removed the fetters which hobbled the full play of the basic congressional intention to leave to the fact-finding function of the jury the decision of the primary question raised in these cases—whether employer fault played any part in the employee's mishap." Id. at 508-09 (footnotes omitted). "The decisions of this Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury." Id. at 510 (footnotes omitted).

Applying the foregoing principles, it is undisputed that the district court in the present case correctly instructed the jury in accordance with the Court's

teachings in McBride, Rogers, and its other decisions, and that the jury's verdict in favor of Huffman to the effect that the railroad's negligence had played a part in producing the osteoarthritis of his knee injuries is a verdict which fair-minded jurors could reach based on the evidence in this case. The jury's findings that the railroad negligently failed to train Huffman and its other trainmen in ergonomically safe work methods to prevent musculoskeletal injuries or to properly equip and provide them a safe work environment are not disputed on appeal.[3] In addition, the record contains a great deal of other expert, lay and circumstantial evidence supporting the jury's reasonable findings that osteoarthritis is a musculoskeletal injury or disorder; and that the railroad's negligence played a part, at least slightly, in bringing about and aggravating the osteoarthritis in Huffman's knees.

Dr. Alan Dwaine Smith, Huffman's treating physician testified that he diagnosed Huffman as having osteoarthritis, also called degenerative arthritis, in both of his knees. Dr. Smith testified that osteoarthritis is "inflammation of the articular cartilage at a joint," caused by external "wear and tear" on the knee over time. He explained that knee osteoarthritis is located "in the joint space

---

[3] Huffman presented evidence of Union Pacific's negligence as follows: Huffman presented a Union Pacific memorandum that discussed the need to implement a policy to prevent cumulative trauma disorders—now referred to as musculoskeletal disorders—in response to proposed OSHA ergonomic guidelines and recognized that these disorders would be potentially compensable under FELA. Yet, as Dr. David Ramcharan, manager of Human Factors Engineering for Union Pacific, testified, Union Pacific did not have a company-wide ergonomics policy and had not provided wide-scale ergonomics training to its employees. Although Union Pacific did develop two ergonomic training programs—the Pro-Back program and the Body-in-Motion program, which focused on preventing musculoskeletal injuries in the whole body—Huffman and his department were only shown the Pro-Back program. Huffman also presented evidence that another railroad company provided full-body ergonomic training to its trainmen. In addition, Dr. Richard William Bunch testified, "ergonomics would be the science of actually redesigning the job to fit the worker . . . either by changing the equipment or by changing the work environment." Union Pacific took no steps to improve its equipment or work environment in order to avoid musculoskeletal injuries in its trainmen.

between the femur and the top of the tibia."[4] Dr. Richard William Bunch, a licensed, board-certified physical therapist and medical Ph.D., testified that musculoskeletal disorders "mean[] . . . a whole array of problems that involve muscle, tendon, bone, ligaments, joints, even nerves and blood vessels." He further testified that musculoskeletal disorders "are all mechanical-based type injuries, it means they're caused by mechanisms that result from either an interruption of blood flow to tissues causing secondary changes, overuse, high[] repetition of use, too much force, poor life style. . . . It's when you are in one position too long or in one posture too long or doing repetitive work too long without allowing tissues time to recover is when we run into the problems. And that reaction to those stress factors varies among individuals." This expert testimony is clearly sufficient evidence from which a fair minded jury could reasonably infer that the knee is a joint; that osteoarthritis of the knee is a joint injury caused by "wear and tear" such as that involved in trainmen work; that osteoarthritis is therefore a musculoskeletal injury or disorder; that Union Pacific's negligent failure to train its trainmen in how to avoid musculoskeletal injuries by performing their duties ergonomically safely and the railroad's failure to provide safe equipment and work environments for that purpose unduly increased trainmen's risks of incurring musculoskeletal disorders; and that, accordingly, Union Pacific's negligent failure to train its trainmen in ergonomics or provide safe equipment and work environments, played a part in causing or contributing to Huffman's osteoarthritis of the knees.

Dr. Smith also testified that osteoarthritis is distinguishable from other forms of arthritis. He testified that rheumatoid arthritis is caused by an

---

[4] It is well known that a "knee" is "a joint in the middle part of the human leg that is the articulation between the femur, tibia, and patella." Merriam-Webster's Collegiate Dictionary 690 (11th ed. 2007) (emphasis added); see also 7 Oxford English Dictionary 485 (2d ed. 1989) ("The [knee is the] joint, or region about the joint, between the thigh and the lower leg.").

autoimmune disorder, and that gouty arthritis is caused by a build up of uric acid in the synovial fluid of the joint. In contrast, he explained, osteoarthritis is a wear and tear injury. Dr. Smith testified that osteoarthritis is a "progressive problem" that is incurable and worsens over time.

Dr. Robert Owen Andres, an ergonomic expert and consultant, testified that Huffman's trainman activities in throwing switches and coupling air hoses exposed his lower limbs to ergonomic risk factors, including squatting, kneeling, lifting, carrying, climbing, and walking on uneven surfaces. Dr. Andres testified that trainmen are often taught to lift with their legs rather than their back, which shifts stress to the lower extremities.

Huffman testified to the rigorous work that he performed as a trainman: walking on ballast entire lengths trains and back, covering up to 16,000–18,000 feet, over 3 miles; jumping off moving trains onto large, sloped ballast and running ahead to line switches; throwing poorly maintained switches into position that placed great stress on his lower extremities; climbing individual cars of trains to set or release hand brakes; connecting and disconnecting train cars; and locating and replacing broken car couplings, which weighed 50 to 83 pounds, without assistance.

Applying the principles laid down by the Supreme Court's decisions in McBride, Rogers, and other cases, it is clear that the expert testimony, lay testimony, including that of Huffman, and the circumstantial evidence described above provided a sufficient basis from which the jury could reasonably infer or find that the railroad's negligence played a part in bringing about Huffman's knee osteoarthritis. Contrary to the panel majority opinion's mistaken view, in FELA cases, there is no requirement that the plaintiff must present explicit witness testimony as to causation of injury before the jury may reasonably infer or find that employer negligence played any part, no matter how small, in bringing about the injury or death for which damages are sought. In fact the

Supreme Court has specifically held that "direct evidence of a fact is not required" and that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive that direct evidence." Michalic, 364 U.S. at 330 (quoting Rogers, 352 U.S. at 508 n.17).

### 3. The Correct Causation Analysis Under the Fifth Circuit's Precedents

In Rivera, 378 F.3d 502, we held that, "[i]n the FELA context, when a defendant challenges the sufficiency of the evidence to support a plaintiff's verdict, we must affirm the denial of the defendant's motion for judgment as a matter of law unless there is a complete absence of probative facts to support the conclusion reached by the jury." Id. at 505 (citing Lavender, 327 U.S at 654; Wooden v. Missouri Pac. R.R. Co., 862 F.2d 560, 561 (5th Cir. 1989); Davis v. Odeco, Inc., 18 F.3d 1237, 1243 (5th Cir. 1994); and Lane v. R.A. Sims, 241 F.3d 439, 445 (5th Cir. 2001)). From the foregoing analysis, it is clear that there was not a complete absence of probative factual evidence on the issue of causation—as there must be to set aside a plaintiff's jury verdict in a FELA case. Accordingly, it is clear that the panel majority opinion is wrong in reversing the district court's judgment based upon the jury verdict and in granting a JMOL for the railroad.

### 4. The Panel Majority Opinion Directly Conflicts with the Supreme Court and Fifth Circuit FELA Causation Decisions

The panel majority opinion recites parts of the test of a jury case set forth by the Supreme Court in McBride and Rogers, but at no point does it undertake a sustained effort to apply that test to the evidence and determine whether the proofs justify with reason the jury's conclusion that the railroad's negligence played a part in producing the injury for which damages are sought. Nowhere does the majority opinion simply ask and answer whether the jury reasonably

could have inferred from the totality of the evidence that the railroad's conceded negligent failure to provide ergonomic training, safe equipment, and safe work places, played any part, even the slightest, in producing Huffman's knee osteoarthritis. Nor does the panel opinion seem mindful that it does not matter that, from the evidence, the jury might also with reason have attributed the result to other causes, including the wear and stress of the natural aging process. Indeed, the majority's judicial appraisal of whether a jury question was presented does not appear to be narrowly limited to the single question whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in Huffman's injury or disorder.

Similar to the lower court opinion in Rogers, the majority panel opinion here may be read as basing its reversal of the jury verdict on the ground that it appeared to the majority that the natural process of aging and disease was at least as probable a cause for Huffman's knee osteoarthritis as any negligence of the railroad, and that in such case there was no case for the jury. Cf. Rogers, 352 U.S. at 505. But that reasoning clearly conflicts with FELA, which renders railroads liable for employees' injuries or deaths "resulting in whole or in part from [carrier] negligence," 45 U.S.C. § 52, and with the Supreme Court's holdings that "[u]nder [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers, 352 U.S. at 506; see also Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994).

The majority opinion concludes that without the support of explicit testimony by a witness to a causal relationship between the railroad's negligence and Huffman's injuries, the jury's verdict is no more than a guess and cannot qualify as a reasonable inference by fair-minded persons applying the district court's instructions to the evidence. If the Supreme Court has taught anything

in its FELA cases, however, it is that jury verdicts should not be dismissed as guesses or speculation if there is any reasonable basis for them in the record. As early as Tennant v. Peoria & P.U. Ry. Co., 321 U.S. 29 (1944), the Court found that the "focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body." Id. at 35. As noted above, in Rogers the Court emphasized that "the burden . . . is met, and the obligation . . . to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference." Rogers, 352 U.S. at 508. Likewise, in Lavender, the Court re-instated a verdict based on evidence that had been characterized in the state court as "mere speculation and conjecture" and based on a theory of negligence that was "physically and mathematically impossible," stating "[i]t is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear." Lavender, 327 U.S. at 653; see also Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108 (1963) (setting aside the lower court's reversal of a jury verdict as "a series of guesses and speculations" as an invasion of the jury's province where a bug bite near a fetid pool led to amputation of employee's legs). In Lavender and Gallick, the evidence was much thinner than that here.

Instead of adhering to the Supreme Court's precedent and precedent from this circuit, the majority panel opinion is preoccupied with finding ways in which, in its opinion, the evidence presented by the plaintiff could have been clearer or more persuasive. Thus, the majority complains that no witness

presented testimony explicitly "listing osteoarthritis in the knees as a musculoskeletal disorder that could result from performing trainmen activities," Op. at 22, and stated that "[a]t best, there was evidence that the kind of work trainmen did, if not performed properly, could increase the chances of musculoskeletal disorders. The term musculoskeletal disorders, however, encompasses 'a whole array of problems that involve muscle, tendon, bone ligaments, joints, even nerves and blood vessels.'" Id. As the Court has admonished, however, "[i]t is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable." Gallick, 372 U.S. at 114-115.

Consequently, the panel majority opinion purports to create a precedent, rule of decision, and causation of injury standard that directly conflicts with Supreme Court and Fifth Circuit precedents, and which requires en banc review and correction. Under the Federal Rules of Appellate Procedure, an en banc hearing should be ordered when "en banc consideration is necessary to secure or maintain uniformity of the court's decisions" or where "the proceeding involves a question of exceptional importance." Fed. R. App. P. 35. Our court's Internal Operating Procedures state that rehearing en banc is for cases that involve "an error of exceptional public importance or an opinion that directly conflicts with prior Supreme Court, Fifth Circuit or state law precedent." This case clearly meets all those qualifications. The majority opinion directly contradicts Supreme

Court and Fifth Circuit precedent, and will disrupt the uniformity of the standard of causation applied in jury instructions, jury trials, and post-verdict motions in FELA and Jones Act cases. This case also clearly presents an issue of exceptional public importance.

For these reasons, I dissent from the decision to deny en banc rehearing.