# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                                      |   |                        |
|--------------------------------------|---|------------------------|
|                                      | ) |                        |
| SHAWN MARTIN,                        | ) |                        |
|     Plaintiff,   | ) |                        |
|                                      | ) |                        |
|   v.                       | ) |                        |
|                                      | ) | C.A. NO. N19C-03-038 DJB |
| NATIONAL RAILROAD                    | ) |                        |
| PASSENGER CORPORATION,               | ) |                        |
| d/b/a AMTRAK,                        | ) |                        |
|     Defendant.   | ) |                        |

Submitted:  April 28, 2023
Decided:  June 15, 2023

## ORDER

*Upon Defendant's Motion in Limine –* **DENIED.**

This 15th day of June, 2023, having considered Defendant's Motion *in Limine/Daubert* Challenge, the Plaintiff's Response, oral arguments of counsel and the record in this matter; it appears to the Court that:

1.      Plaintiff Shawn Martin (hereinafter "Plaintiff") filed suit alleging negligence against his employer, Defendant Nationwide Railroad Passenger Corporation, d/b/a Amtrak, (hereinafter "Defendant") pursuant to the Federal Employers' Liability Act (hereinafter "FELA") alleging various claims of negligence, including the failure to provide its Police Officer employees tasers for carrying out their official duties.

-1-

2. This Court previously ruled that Plaintiff must present expert testimony in order to make out a claim of negligence for such a failure.[1] In doing so, the Court gave Plaintiff additional time to obtain an expert. Following that allowance, Plaintiff identified Anthony Grano as their expert, and provided his *curriculum vitae* and letter report dated January 5, 2023, to Defendant. Thereafter, Defendant filed the instant motion.

3. Defendant, while couching this motion as one *in limine*, argues that Plaintiff's expert fails under the *Daubert* standard for: 1) not being a qualified expert; 2) providing unreliable opinions and 3) failing to provide an opinion that can assist the trier of fact. Plaintiff retorts that his expert is sufficiently qualified and the testimony is relevant and will assist the jury in their determination.

4. First and foremost, the Court notes that this motion is not a motion *in limine*, but a *Daubert* motion. The deadline for *Daubert* motions have passed, however, because Plaintiff was afforded the opportunity to obtain an expert outside of the dates prescribed by the Trial Scheduling Order, the Court will allow the motion to proceed at this time on its merits.

5. Delaware Rule of Evidence 702 ("D.R.E.") dictates the admissibility of

---

[1] *Shawn Martin v. Nationwide Railroad Passenger Corporation d/b/a Amtrak*, N19C-03-038 DJB Docket Item 72.

expert testimony.[2]  D.R.E. 702 specifically provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if: (a) the witness is qualified as an expert by knowledge, skill, experience, training, or education; (b) the evidence is relevant; (c) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (d) the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and (e) the expert testimony will not create unfair prejudice or mislead the jury.[3]

6.     The trial court acts as the gatekeeper for proffered expert testimony and before allowing such testimony, must conclude that the expert opinion testimony is both (i) relevant and (ii) reliable.[4]  Expert testimony is relevant if "it would assist the fact finder in understanding the evidence or determining a fact in issue."[5]  "Expert testimony is reliable if it is premised on technical or specialized knowledge, which requires the testimony to be grounded in reliable methods and procedures and supported by appropriate validation—*i.e.*, good grounds, based on what is known."[6]

---

[2] *Smack-Dixon v. Wal-Mart, Inc.*, 2021 WL 3012056, at *2 (Del. Super. Ct. July 16, 2021).

[3] D.R.E. 702.

[4] *Tumlinson v. Advanced Micro Devices, Inc.*, 81 A.3d 1264, 1269 (Del. 2013) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)).

[5] *Marydale Preservation Assocs., LLC v. Leon M. Weiner & Assocs., Inc.*, 2022 WL 4394375, at *2 (Del. Super. Ct. Sept. 23, 2022) (internal quotation marks and citations omitted).

[6] *Id*.

7.     The proponent of the expert evidence bears the burden of establishing its admissibility by a preponderance of the evidence.[7] "There is a 'strong preference' for admitting expert opinions 'when they will assist the trier of fact in understanding the relevant facts or the evidence.'"[8]

<h3 style="text-align:center">QUALIFICATIONS</h3>

8.     Grano is the co-founder and executive director of a training provider that instructs law enforcement agencies, military units, and security companies in combat training, arrest and control methods, and other defensive tactics, which includes the use of tasers.[9]   Per Grano, both the Department of Defense ("DoD") and the Inter-Service Non-Lethal Individual Weapons Instructor Course ("INWIC") have recognized him as a subject matter expert on the use of tasers.[10]  Grano has been providing training to law enforcement and military officers for at least twenty-five years.[11]  As a result, Grano is a qualified expert regarding the appropriateness of the use of tasers and when and whether or not police officers should be so equipped with this device.  Any questions regarding the specific extent of Grano's experience with

---

[7] *Henlopen Hotel, Inc. v. United Nat'l Ins. Co.*, 2020 WL 233333, at *2 (Del. Super. Ct. Jan. 10, 2020) (citing *Tumlinson*, 81 A.3d at 1270).

[8] *Marydale*, 2022 WL 4394375, at *2 (quoting *Norman v. All About Women, P.A.*, 193 A.3d 726, 730 (Del. 2018)).

[9] Pl.'s Opp'n Br., Ex. E (hereinafter "Grano's Expert Report"), Feb. 20, 2023 (D.I. 85); *id.*, Ex. F.

[10] Pl.'s Opp'n Br., Ex. G (D.I. 85).

[11] *Id.*, Ex. F.

taser instruction goes to the weight of his testimony, not its admissibility.[12]

## RELIABILITY

9. The Unites States Supreme Court in *Daubert* identified a list of non-exclusive factors for trial courts to consider in determining the reliability of expert opinion testimony:

> (1) Whether a theory or technique has been tested;
> (2) Whether it has been subject to peer review and publication;
> (3) Whether a technique had a high known or potential rate of error and whether there are standards controlling its operation; and
> (4) Whether the theory or technique enjoys general acceptance within the relevant scientific community.[13]

10. Given that many fields of expertise are not subject to peer review and publication, Delaware courts instruct against the rigid application of *Daubert* factors to determine reliability of expert evidence.[14] As a result, trial courts possess "broad

---

[12] *See Rodriguez v. State*, 30 A.3d 764, 769-70 (Del. 2011) ("Like expert witnesses generally, an analyst's lack of proper training or deficiency in judgment may be disclosed in cross-examination. By probing Hegman on his particular experience in tire track and shoeprint analysis, defense counsel challenged his credibility before the jury and the weight to be given the impression evidence." (internal citations omitted)).

[13] *Bowen v. E.I.DuPont de Nemours & Co.*, 906 A.2d 787, 794 (Del. 2006) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-94 (1993)).

[14] *Smack-Dixon*, 2021 WL 3012056, at *5; *M & G Polymers USA, LLC v. Carestream Health, Inc.*, 2009 WL 3535466, at *6 (Del. Super. Ct. Aug. 5, 2009).

latitude" in making such determinations.[15] "The factors will be applied flexibly where a proffered witness's area of expertise is not expected to carry the traditional indicia of scientific acceptance; however, reliability remains a prerequisite to admissibility of all expert opinions, whether they are based upon scientific, technical, or other specialized knowledge."[16]

11.    Grano's opinion on whether use of a taser would have prevented Plaintiff's injuries is non-scientific.   To determine reliability in the non-scientific opinion context, Delaware courts have looked to whether the "opinions have a reliable basis in [the expert's] knowledge and experience" and whether the "report explains how that knowledge and experience informed his opinions regarding the case."[17]

12.    In developing his report, Grano relied upon the complaint, video evidence, and multiple depositions taken in the case.[18] No other supportive materials were referenced or provided in the report.[19]  Though the report does not explicitly

---

[15] *Perry v. Berkley*, 996 A.2d 1262, 1267 (Del. 2010) (citing *Gen Motors Corp. v. Grenier*, 981 A.2d 531, 536 (Del. 2009)).

[16] *M & G Polymers*, 2009 WL 3535466, at *6 (internal quotation marks and citations omitted).

[17] *Id.* at *11; *see also State v. Jones*, 2003 WL 21519842, at *3 (Del. Super. Ct. July 2, 2013) ("The Court held that handwriting analysis testimony would assist the jury to further understand the evidence and found the witness to be a skilled person by training and experience." (internal quotation marks omitted)).

[18] Pl.'s Opp'n Br., Ex. E (D.I. No. 85).

[19] *See generally id.*

detail his source of knowledge, Grano presumably relied upon his knowledge and experience in the use of tasers and defensive tactics in reaching his opinion. Grano explains that a taser's effect, rendering a subject immobile for a limited period of time, is an "immeasurable asset" to law enforcement and "results in less officer injuries[.]"[20] Taken together, Grano proffers a reliable basis of knowledge and experience and explained how his knowledge of tasers informed his ultimate opinion.[21]

### TESTIMONY WILL ASSIST THE JURY

13. Amtrak further contends that Grano's expert testimony will not assist the jury because it has no bearing on "whether Amtrak breached any applicable standard of care in relation to the issuance of Tasers."[22] As a result, Amtrak asserts that Grano's opinion will confuse the issue and mislead the jury. Plaintiff asserts that under FELA, the jury must decide whether Amtrak failed to provide a safe place to work for its employees and that Grano's opinion is relevant to the jury's determination of a safe workplace.

---

[20] *Id.*

[21] *See e.g.*, *M & G Polymers*, 2009 WL 3535466, at *10-11; *Jones*, 2003 WL 21519842, at *3; *see also Blessing v. Williams*, 2022 WL 4182534, at *16 (M.D. Fla. Sept. 13, 2022) ("But the most important test of an experience-qualified non-scientific expert's reliability is that the expert must be able to explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." (internal quotation marks and citations omitted).

[22] Amtrak's Mot. *in Limine* ¶ 35, Jan. 23, 2023 (D.I. 75).

14.     Given the context, subject matter and his qualifications, Grano's opinion will assist the jury.  Liability under FELA stems from the railroad employer's duty to provide a reasonably safe workplace.[23]  Accordingly, Grano's opinion will assist the jury in determining whether Amtrak's decision not to equip officers with tasers breached its duty to provide a safe working environment.

15.     As a result, the Motion to Exclude Grano's Testimony is DENIED.

**IT SO ORDERED** this 15TH day of June, 2023.

_____
Danielle J. Brennan, Judge

Cc:     All parties via Lexis File&Serve

---

[23] *Rivera v. Union Pacific R. Co.*, 378 F.3d 502, 507 (5th Cir. 2004) ("[FELA] authorizes an injured railroad employee to recover damages from his employer for injury or death resulting in whole or in part from the [railroad's] negligence.  The ultimate fact question is whether the railroad exercised reasonable care in creating a reasonably safe working environment." (internal quotation marks and citations omitted)); *see also Tufariello v. Long Island R. Co.*, 458 F.3d 80, 91 (2nd Cir. 2006) (finding railroad employer's refusal to provide hearing protection to employees sufficient to submit case to jury).